UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JUDY JOHN

                                              Plaintiffs,                COMPLAINT
                                                                          Case No.

                                                                          JURY TRIAL DEMANDED

        -against-

THE DEPARTMENT OF INFORMATION
TECHNOLOGY AND TELECOMMUNICATIONS,
NYC-TV formerly known as Crosswalks Television, NYC MEDIA GROUP,
CITY OF NEW YORK, ARICK WIERSON, and YOCASTA
DELGADO.

                                              Defendants.
-----------------------------------------------------------X

      Plaintiff, Judy John, by her attorney, Eugenie Gilmore, Esq. for her complaint against the Defendants, The Department of Information Technology and Telecommunications, NYC-TV formerly known as Crosswalks Television, NYC Media Group, City of New York, Arick Wierson, and Yocasta Delgado.

## INTRODUCTORY STATEMENT

1. This action is brought to remedy discrimination in employment on the basis of race, color, age, and retaliation, in violation of in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000 et seq. ( "Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. Sec. 621 et seq., the Civil Rights Act of 1866, 42 U.S.C. 1981, and 42 U.S.C. 1983. The Plaintiffs also bring supplementary State and City discrimination claims based on discrimination and retaliation, in the terms, conditions and privileges of employment, as protected under the New York State Human Rights Law, Executive Law Sec. 290 et seq. (the "Human Rights Law"); and the Administrative Code of the City of New York Secs. 8-101 et seq. as amended by the Local Civil Rights Restoration Act of 2005 (the "Administrative Code").

2. Plaintiff seeks injunctive and declaratory relief, economic, compensatory, and punitive damages and other appropriate legal and equitable relief pursuant to federal, state and municipal law.

1

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343 (a)(4), 42 U.S.C. 12117 and 42 U.S.C. 20000e-5 (f). Supplemental jurisdiction of the court over the State and Municipal Claims is based upon 28 U.S.C. Sec 1331.

4. The unlawful employment practices alleged below were committed within this District. Accordingly, venue lies within the United State District Court for the Southern District of New York.

5. Defendants are covered employers for the purposes of Title VII, ADEA, Civil Rights Act of 1866, 42 U.S.C. 1981; 42 U.S.C. 1983, the Human Rights Law and the Administrative Code.

6. Plaintiff filed a timely charge of discrimination against Defendants, the Department of Information, Technology and Telecommunications, NYC-TV formerly known as Crosswalks Television, and the City of New York with the Equal Employment Opportunity Commission on October 27, 2003.

7. Plaintiff is a member of the United States Army National Guard.

8. Plaintiff was called up to active military service in August, 2004.

9. On or about September 29, 2004, the EEOC issued a notice informing Plaintiff of her right to sue Defendants in federal court with respect to the ADEA charges. The Notice was received on or about October 15, 2004.

10. On or about November 8, 2004, the United States Department of Justice issued Plaintiff a notice informing her of her right to sue Defendants in federal court with respect to the Title VII charges.

11. Plaintiff was discharged from active military service by the United States Army National Guard in August, 2006.

12. Pursuant to the Soldiers' and Sailors' Civil Relief Act, 50 App. U.S.C.A. 526, Plaintiff's time to file this action was tolled during her period of military service.

13. A copy of this complaint was served on Corporation Counsel of the City of New York and the New York City Human Rights Commission prior to the filing of this action.

14. Plaintiff has fully complied with all prerequisites to jurisdiction in this court.

## PARTIES

15. Plaintiff, Judy John is a resident of Burlington County, State of New Jersey.

16. Plaintiff Judy John was, at all times relevant, employed by defendants.

17. Plaintiff is a black female who was, at all times relevant, over the age of 40.

18. Defendant, the City of New York Department of Information Technology and Telecommunications, (hereinafter DoITT) is an agency of the City of New York.

19. Crosswalks was a group of cable channels set aside for educational and governmental use and supervised by the City of New York and administered by DoITT. Crosswalks is now known as NYC-TV. It is still supervised by the City of New York and administered by DoITT. The address of DoITT is 11 Metrotech, Brooklyn, New York. The address of NYC-TV is 1 Centre Street, New York, New York 10007.

20. NYC Media Group is a part of DoITT and is responsible for managing the programming of the City of New York's media assets including NYC TV.

21. The City of New York is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

22. Arick Wierson was, at all times relevant, the General Manager of Crosswalks.

23. On September 23, 2002, Arick Wierson was appointed General Manager of Crosswalks on an acting basis. He had previously been employed as the Deputy General Manager of Crosswalks.

24. Mr. Wierson is sued in his individual and managerial capacities. He is an employer or agent of the employer within the laws of discrimination.

25. Yocasta Delgado was, at all times relevant, the Director of Administration at Crosswalks for the Crosswalks employees paid on the Research Foundation of the City University of New York (RF CUNY) Crosswalks budget.

26. Ms. Delgado is being sued in her individual and managerial capacities. She is an employer or agent of the employer within the laws of discrimination.

## FACTUAL ALLEGATIONS

27. At the time of Plaintiff's termination, her title was Receptionist/ Administrative Assistant.

28. Plaintiff began working at Crosswalks on July 16, 1993 as a volunteer to answer telephones.

29. Plaintiff became a full time paid receptionist on September 13, 1993.

30. Plaintiff's duties encompassed being an administrative assistant to the General Manager, administrative support to the Crosswalks staff, liaison between Crosswalks and the building services where Crosswalks is located, Special Projects and as a liaison from Crosswalks to New York City government's Internet site in addition to receptionist duties.

31. DoITT maintained two different budget lines for its Crosswalk employees.

32. One line was the DoITT line and the other was the Research Foundation of the City University of New York line (hereinafter RF CUNY).

33. DoITT transferred funds to RF CUNY for payment of staff positions.

34. DoITT also paid a fee to RF CUNY for the fringe benefits for staff positions.

35. The portion of the staff of Crosswalks that were paid from the RF CUNY payroll were employees of Crosswalks and DoITT.

36. Positions that were paid from the DoITT Crosswalks budget were civil service.

37. Renalda Medina, the Director of Human Resources was the administrator for the Crosswalk employees paid on the DoITT Crosswalk budget line.

38. Yocasta Delgado, was the administrator for the Crosswalks employees paid on the RF CUNY Crosswalks budget line.

39. In March, 2003, Plaintiff received a memo from Wendy Patitucci, Director of Employment Policy and Practice at RF CUNY which was forwarded by Yocasta Delgado, Director of Administration of the Crosswalks RF CUNY employees.

40. This memo stated that a mandatory meeting would be held on March 26, 2003 for all Crosswalks employees paid on the RF CUNY budget line.

41. At the meeting, all the Crosswalks employees paid on the RF CUNY budget line were given a memo stating that June 6, 2003 would be their last day of employment.

42. At the meeting, Crosswalks employees paid on the RF CUNY budget line were told that the Memorandum of Understanding between DoITT and RF CUNY would terminate on June 6, 2003.

43. The Crosswalks employees paid on the RF CUNY budget line were told their employment would terminate at that time because they were paid on that budget.

44. DoITT has stated that the RF CUNY Memorandum of Understanding was not renewed or was terminated due to budget cuts.

45. DoITT has stated that Plaintiff's former position was cut due to budgetary constraints.

46. DoITT had posted positions for Crosswalks which were to be paid on the DoITT Crosswalks budget line.

47. When DoITT or Crosswalks filled a new position on the DoITT budget line, the position was required to be posted.

48. It was required that the posting include information concerning the Civil Service title, office or functional title, salary, job duties and Civil Service requirements.

49. The document which is required to be used to initiate the hiring process is a form called "Request to Fill Position".

50. The deadline to apply for jobs that had been posted on the DoITT Crosswalks budget line was March 27, 2003 which was only a day after this meeting.

51. On March 27, 2003, Plaintiff submitted her resume to DoITT for one of the posted positions with Crosswalks.

52. The position was Community Associate JVN #858/03/111CW.

53. The position had an office title of Administrative Assistant.

54. This position included duties Plaintiff had been performing with Crosswalks.

55. Plaintiff was qualified for this position.

56. Plaintiff received "very good" on her evaluations.

57. Plaintiff was not hired for this position.

58. Plaintiff was interviewed for the position by Arick Wierson, the General Manager on or about April 7, 2003.

59. At the end of the interview, Mr. Wierson told Plaintiff that she was a strong

candidate.

60. Wierson told Plaintiff that the choice was not his decision.

61. Mr. Wierson asked Plaintiff during the interview whether she had ever tried to get a job outside Crosswalks.

62. When Mr. Wierson said Plaintiff would not be getting the position, he told Plaintiff he would put in a "good word" at "311", a new Citizens Service Center which was a telephone access to city information administered by DoITT.

63. The day after Mr. Wierson said Plaintiff would not be retained, Yocasta Delgado told Plaintiff that Mr. Wierson had been looking for a place for Plaintiff in the "City" for some time. "a place in the City" referred to a position with another New York City agency.

64. As her termination date approached, Plaintiff asked Mr Wierson the status of his recommendation to 311.

65. Mr. Wierson told her that he had given this duty to Yocasta Delgado.

66. Upon information and belief, Plaintiff's duties have been distributed to Yocasta Delgado, Wilkella Walker and two newly hired women, Aura Reed and Betty Cruz.

67. Although Plaintiff was Mr. Wierson's assistant, he would talk to her thorough other people.

68. Mr. Wierson would speak to Plaintiff through Yocasta Delgado and Ms. Delgado's assistant, Wilkella Walker.

69. Ms. Delgado is a light skinned Hispanic.

70. Ms. Delgado's duties included processing RF CUNY time sheets, updating the time and leave record files, issuing monthly updates of Time/Leave balances to RF CUNY employees, maintaining personnel files and duties pertaining to procurement.

71. Ms. Delgado was paid on the RF CUNY Crosswalks budget.

72. Ms. Delgado assisted in the recruitment and hiring process for Crosswalks and NYC-TV.

73. Ms. Delgado was retained or was hired into a new position at DoITT.

74. Ms. Walker is a light skinned African American woman who was hired initially as a

6

temporary employee.

75. Ms. Walker was hired as a staff person during the period that the employer was contemplating letting the Crosswalk employees paid on the RF CUNY budget go.

76. Ms. Walker was hired to perform administrative duties.

77. Ms. Walker was hired to act as Ms. Delgado's assistant.

78. In November, 2002, Mr. Wierson asked Plaintiff to train Ms. Walker to do Plaintiff's duties.

79. Although Ms. Walker was assigned administrative tasks, she was given editing training.

80. Upon information and belief, Ms. Walker was given editing training while she was a temporary employee.

81. Ms. Walker was allowed to get involved with production.

82. Upon information and belief, Ms. Walker began working partially as a producer and partially as Mr. Wierson's assistant.

83. Plaintiff's requests to get involved with production tasks were refused.

84. Aura Reid also worked as Mr. Wierson's assistant.

85. Ms. Cruz is a light skinned Hispanic female.

86. Upon information and belief, Ms. Cruz was hired to perform receptionist duties.

87. Upon information and belief, Ms. Delgado, Ms. Reid and Ms. Walker are younger than Plaintiff.

88. Albert Stewart, one of Plaintiff's co-workers brought a racial discrimination and retaliation case against Crosswalks, DoITT and the City of New York in the Southern District of New York. The index number was 97 CIV 9268 (BSJ).

89. In the fall of 2000, Plaintiff provided an affidavit in support of Albert Stewart in his racial discrimination and retaliation case.

90. Plaintiff was placed on the witness list of the draft of the potential pretrial order for Mr. Stewart's trial.

91. The draft of the pretrial order was sent to the City's attorneys in March, 2002.

92. Mr. Stewart's case settled in late August, 2002 and did not go to trial.

93. Stewart was a Crosswalks employee paid on the RF CUNY budget.

94. Mr. Stewart was one of the Crosswalks employees paid on the RF CUNY budget who were told their jobs would be terminated because the Memorandum of Understanding was being terminated.

95. In March, 2003, Mr. Stewart applied for four positions that were posted by DoITT for positions available at Crosswalks.

96. Mr. Stewart was not hired for any of these positions.

97. Polycarpe Kalembwe was a Crosswalks employee paid on the RF CUNY budget.

98. Mr. Kalembwe was one of the Crosswalks employees paid on the RF CUNY budget who were told their jobs would be terminated because the Memorandum of Understanding was being terminated.

99. In the fall of 2000, Mr. Kalembwe provided an affidavit in support of Albert Stewart in his racial discrimination and retaliation case.

100. This was the same case that Plaintiff had provided an affidavit.

101. Mr. Kalembwe was placed on the witness list of the draft of the potential pretrial order for Mr. Stewart's trial. The draft of the pretrial order was sent to the City's attorneys in March, 2002.

102. Mr. Kalembwe also had brought litigation of his own against his employer. He took part with several co-workers in a group litigation against Crosswalks to complain about the discriminatory treatment of the minority employees.

103. Albert Stewart was also part of the same group litigation. That case was filed in the United States District Court of the Southern District of New York. The index number was 98 CIV 7316 (BSJ).

104. In March, 2003, Mr. Kalembwe applied for a position that was posted by DoITT for a position available at Crosswalks.

105. Mr. Kalembwe was not hired for that position.

106. Upon information and belief, Plaintiff, Stewart and Kalembwe were the oldest Crosswalks employees paid on the RF CUNY budget.

107. As part of Plaintiff's affidavit in Mr. Stewart's litigation, she set forth that black employees including herself were treated in an inferior way compared to other employees at Crosswalks.

108. In 1999, Mr. Robert "Chip" Benson was the General Manager.

109. Plaintiff reported directly to Mr. Benson.

110. In approximately 1999, Plaintiff expressed her interest in moving from being a receptionist to production work to Mr. Benson.

111. Mr. Benson discouraged these efforts.

112. Mr. Benson asked Plaintiff how taking on producing tasks would impact on her receptionist duties.

113. In 2000, Plaintiff approached a new General Manager, Sara Porath for permission to have supervisory training as a potential way to improve her opportunities at Crosswalks.

114. Ms. Porath refused.

115. Ms. Porath is a white female.

116. Yocasta Delgado was present for this conversation.

117. Ms. Porath offered Plaintiff other positions that were not promotions.

118. The only position that Ms. Porath offered that was a promotion was as an assistant to Ms. Delgado.

119. Ms. Porath said during a meeting in front of Ms. Delgado that she did not think Plaintiff could handle the position.

120. Ms. Porath and Ms. Delgado would both be the decision makers as to who would get the position.

121. Ms. Porath instructed Ms. Delgado to change Plaintiff's title to administrative assistant.

122. Plaintiff was told the title was changed because she would be Ms. Porath's

assistant.

123. Plaintiff told Ms. Porath that a title change normally included clarification of duties and an increase of pay. Plaintiff asked for a pay increase and job description.

124. Ms. Porath gave Plaintiff a job description as her administrative assistant.

125. Plaintiff felt it was a new position and asked for a pay increase.

126. Ms. Porath said she would consider giving Plaintiff an 8 percent increase within 4 months if Plaintiff: kept the main office cleaned; assisted Ms. Porath with confidential papers; filed papers; and vacuumed Porath's office.

127. Upon information and belief, no other employees who were not custodial or janitorial staff were asked to clean before they would be given a raise.

128. When Arick Wierson came into the General Manager position, Plaintiff discussed her potential for growth at Crosswalks with him.

129. Plaintiff told Wierson she would like to become more involved in the administrative procedures and business affairs of Crosswalks.

130. Mr. Wierson told Plaintiff that he did not feel that she met the qualifications to move from the receptionist position to different responsibilities.

131. At that time, Plaintiff performed administrative tasks that were outside the traditional receptionist duties and performed them well.

132. Mr. Wierson told Plaintiff there were projects he would like to introduce her to but he did not think she could do them.

133. During 2003, DoITT terminated two Crosswalks employees paid from the DoITT line of Crosswalks due to alleged budget cuts.

134. The Crosswalks employees who were terminated at that time were Robin Gaffney and Noel Lopez.

135. Both employees were minorities.

136. Ms. Gaffney is a dark skinned African American.

137. In February, 2003, Mr. Wierson had told several of employees that they must go for a training at 311.

138. The only people that were asked to go for this training were minorities.

139. These employees were Plaintiff, Robin Gaffney, Noel Lopez, and Ms. Walker.

140. All except Ms. Walker were not retained by Crosswalks.

141. Arick Wierson, aided and abetted in discriminating against Plaintiff.

142. Arick Wierson participated in the decision not to retain or to not hire Plaintiff.

143. Yocasta Delgado aided and abetted in discriminating against Plaintiff.

144. Yocasta Delgado participated in the decision to not retain or not hire Plaintiff.

145. Crosswalks has a history of mistreating its minority employees. Through the years there had been favoritism of whites over minorities. Light skinned blacks and Hispanics were treated better than dark skinned blacks. This treatment went to promotion, raises and chances for advancement.

146. No Caucasian Crosswalks employees were terminated.

147. Of the Crosswalks employees paid on the RF CUNY budget line, no Caucasian employees who applied for positions on the DoITT budget line were rejected for positions.

148. Some of the Crosswalks employees paid on the RF CUNY budget line applied for DoITT positions following being told their jobs would be terminated.

149. Of those Crosswalks employees paid on the RF CUNY budget line, only four were not offered a position with Crosswalks.

150. Of those four, three were Plaintiff, Kalembwe, and Stewart.

151. Plaintiff was not allowed to advance at Crosswalks or to fully take part in opportunities for growth.

152. Upon information and belief, black Crosswalks employees were disproportionately adversely affected by the employers' termination and failure to hire or retain employees due to the stated reason of budget cuts.

153. Plaintiff, Ms. Gaffney, Mr. Kalembwe and Mr. Stewart are all dark complexioned black.

154. There were no African Americans in higher management at the time of the

terminations in 2003.

155. The failure of the employer to treat black employees equally is so widespread, permanent and well settled so as to constitute the official policy, practice or custom of Defendants.

156. Defendants, acting under color of law and pursuant to their official policy, practice or custom, intentionally, knowingly and or with deliberate indifference for the rights of Plaintiffs, discriminated against them in selecting them to not be retained or hired during the stated budget cuts on the basis of their race and color.

157. As a direct and proximate result of the acts of Defendants as set forth herein, Plaintiffs were deprived of their rights under the Thirteenth Amendment to the Constitution of the United States as protected by 42. U.S.C. Sec. 1981.

158. As a direct and proximate result of the acts of Defendants as set forth herein, Plaintiffs were deprived of her rights under the Fourteenth Amendment to the Constitution of the United States.

159. The acts of Defendants as set forth herein violated 42 U.S.C. 1983.

AS AND FOR A FIRST CAUSE OF ACTION: Civil Rights Act of 1866 (1981)

160. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 159 as if set forth herein.

161. This claim is brought against Defendants, jointly and severally.

162. Defendants have violated the Civil Rights Act of 1866 (1981) by discriminating against the Plaintiff on the basis of race and color in the terms and conditions of her employment.

163. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

164. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Civil Rights Act of 1866 giving rise to punitive damages.

AS AND FOR A SECOND CAUSE OF ACTION: TITLE VII

165. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 164 as if set forth herein.

166. This claim is brought against Defendants, jointly and severally.

167. Defendants have violated Title VII by discriminating against the Plaintiff on the basis of race and color in the terms and conditions of her employment.

168. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

### AS AND FOR A THIRD CAUSE OF ACTION: HUMAN RIGHTS LAW - RACE AND COLOR DISCRIMINATION

169. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 168 as if set forth herein.

170. This claim is brought against the Defendants, jointly and severally.

171. By terminating Plaintiff, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race and color, in violation of the Human Rights Law.

172. Defendants have intentionally discriminated against Plaintiff in the terms and conditions of her employment based upon race and color in violation of the Human Rights Law.

173. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### AS AND FOR A FOURTH CAUSE OF ACTION: ADMINISTRATIVE CODE  -   RACE AND COLOR

174. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 173 as if set forth herein.

175. This claim is brought against the Defendants, jointly and severally.

176. By terminating Plaintiff, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race and color, in violation of the Administrative Code.

177. Defendants have intentionally discriminated against Plaintiff in the terms and conditions of her employment based upon race in violation of the Administrative Code.

178. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Administrative Code giving

rise to punitive damages.

179. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### AS AND FOR A FIFTH CAUSE OF ACTION: TITLE VII: RETALIATION

180. Plaintiff, repeats and realleges each and every allegation of paragraphs 1 through 179 as if set forth herein.

181. This claim is brought against Defendants, jointly and severally.

182. Defendants have violated Title VII by retaliating against Plaintiff for complaining, participating in a protected activity or opposing discrimination.

183. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

184. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to Title VII giving rise to punitive damages.

185. As a result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### AS AND FOR A SIXTH CAUSE OF ACTION: HUMAN RIGHTS - RETALIATION

186. Plaintiff, repeats and realleges each and every allegation o paragraphs 1 through 185 as if set forth herein.

187. This claim is brought against Defendants, jointly and severally.

188. Defendants have violated the Human Rights law by retaliating against Plaintiff for complaining, participating in a protected activity or opposing discrimination.

189. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

### SEVENTH CAUSE OF ACTION: ADMINISTRATIVE CODE : RETALIATION

190. Plaintiff repeats and realleges each and every allegation o paragraphs 1 through 189 as if set forth herein.

191. This claim is brought against Defendants, jointly and severally.

192. Defendants have violated the Administrative Code by retaliating against Plaintiff for complaining, participating in a protected activity or opposing discrimination.

193. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

194. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Administrative Code giving rise to punitive damages.

195. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### AS AND FOR A EIGHTH CAUSE OF ACTION: ADEA AGE DISCRIMINATION

196. Plaintiff, repeats and realleges each and every allegation of paragraphs 1 through 195 as if set forth herein.

197. This claim is brought against the Defendants, jointly and severally.

198. By terminating Plaintiff, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of age, in violation of the ADEA.

199. Defendants have intentionally discriminated against Plaintiff in the terms and conditions of her employment based upon age in violation of the ADEA.

200. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### AS AND FOR A NINTH CAUSE OF ACTION: HUMAN RIGHTS LAW - AGE DISCRIMINATION

201. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 200 as if set forth herein.

202. This claim is brought against the Defendants, jointly and severally.

203. By terminating Plaintiff, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of age, in violation of the Human Rights Law.

204. Defendants have intentionally discriminated against Plaintiff in the terms and conditions of her employment based upon age in violation of the Human Rights Law.

205. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Human Rights Law giving rise to punitive damages.

206. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

## TENTH CAUSE OF ACTION:
## ADMINISTRATIVE CODE  - AGE DISCRIMINATION

207. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 206 as if set forth herein.

208. This claim is brought against the Defendants, jointly and severally.

209. By terminating Plaintiff, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of age, in violation of the Administrative Code.

210. Defendants have intentionally discriminated against Plaintiff in the terms and conditions of her employment based upon age in violation of the Administrative Code .

211. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Administrative Code giving rise to punitive damages.

212. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

## AS AND FOR A ELEVENTH  CAUSE OF ACTION: Civil Rights Act of 1866 (1983)

213. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 212 as if set forth herein.

214. This claim is brought against Defendants, jointly and severally.

215. Defendants have violated the Civil Rights Act of 1866 (1983) by discriminating against the Plaintiff on the basis of race and color in the terms and conditions of her employment.

216. As a result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

217. In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff' rights pursuant to the Civil Rights Act of 1863 giving rise to punitive damages.

WHEREFORE, Plaintiff, respectfully requests that this Court enter a judgment:
a) declaring the acts and practices complained of herein to be violations of Title VII, Civil Rights Act (1981) and (1983), Age Discrimination in Employment Act, Human Rights Law, the Administrative Code
b) enjoining and permanently restraining these violations.
c) directing Defendants to pay Plaintiff compensatory damages;
d) directing Defendants pay Plaintiff punitive damages;
e) directing Defendants to pay Plaintiff liquidated damages;
f) awarding Plaintiff the costs of this action, together with reasonable attorney's fees;
g) and granting Plaintiff such other and further relief as the Court deems just and fair.

Respectfully submitted,

Dated November    ,    2006

                                                        Eugenie Gilmore (EG8528)
                                                        Attorney for Plaintiff
                                                        11 Broadway, Suite 715
                                                        New York, New York 10004
                                                        (212) 785-5585