```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JUDY JOHN,                                         :      06 Civ. 13119 (PAC)

                Plaintiff,                         :      OPINION & ORDER

        - against -                                :
                                                   :
THE DEPARTMENT OF INFORMATION
TECHNOLOGY AND TELECOMMUNICATIONS,                 :
NYC-TV, formerly known as Crosswalks Television,
NYC MEDIA GROUP, CITY OF NEW YORK, ARICK           :
WIERSON, and YOCASTA DELGADO,
                                                   :
                Defendants.
                                                   :
------------------------------------------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Judy John brings this action against The Department of Information Technology and Telecommunications ("DoITT"), NYC-TV, NYC Media Group, the City of New York, Arick Wierson, and Yocasta Delgado, claiming race and age discrimination, and unlawful retaliation, pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. § 621 et seq. ("ADEA"), the New York State Human Rights Law, Executive Law § 290 et seq., and the New York City Human Rights Law, Administrate Code §§ 8-101 et seq. Defendants moved for summary judgment on April 21, 2008, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff fails to create a prima facie case and that they had legitimate, nondiscriminatory, and non-retaliatory reasons for their employment decisions. The Court finds that Ms. John has failed to create any genuine issues of material fact because she has not produced sufficient evidence to show either a prima facie case of

discrimination, or that the Defendants' proffered reasons for failing to employ Ms. John are pretextual. Accordingly, the Defendants' motion for summary judgment is GRANTED.

## BACKGROUND[1]

### I. The Parties

Plaintiff is an African-American woman who worked at Crosswalks Television, now known as NYC-TV, as a receptionist and administrative assistant from September 1993 until she was terminated in June 2003, at the age of 46. Crosswalks was a group of cable channels set aside for public, educational, and government use, supervised by the City of New York and administered by DoITT. Defendant NYC Media Group is a part of DoITT and is responsible for managing the programming of NYC-TV. Individual Defendant Arick Wierson was the General Manager of Crosswalks during the relevant time, and individual defendant Yocasta Delgado was the Director of Administration at Crosswalks.[2]

### II. The Crosswalks Termination and Rehiring

Initially, Crosswalks operated under a Memorandum of Understanding ("MOU") between DoITT and the Research Foundation of the City University of New York ("RF CUNY"). The MOU created a separate budget line for employees who were funded under the MOU, such as Ms. John, as distinct from other employees who were paid on a DoITT budget line. In June 2003 DoITT terminated the MOU. Each of the 15 employees at Crosswalks who were funded under the MOU, including Ms. John, were terminated as well.

As DoITT took over full operation of the network, it rehired some MOU employees. Prior to posting the job positions or conducting the interviews, Ms. Delgado gathered resumes of Crosswalks employees who were expected to fill the new openings. Ms. John was not among

---

[1] The following facts are derived from Plaintiff's complaint, the parties' statements of fact submitted pursuant to Local Rule 56.1, and supporting affidavits and exhibits.
[2] The Court dismissed Yocasta Delgado from this case on February 27, 2008.

2

those people. Mr. Wierson eventually interviewed Ms. John for a Community Associate position—a position with essentially the same job description as her previous position—but he did not hire her. Instead, Mr. Wierson hired Wilkela Walker and Aura Reid, two African-American women in their twenties. Ms. Walker had worked at Crosswalks for approximately nine months before the interviews for the Community Associate positions. Ms. Reid was new to both Crosswalks and DoITT.

### III. The Stewart Lawsuit

In 1997, Albert Stewart, a co-worker of Ms. John, filed a racial discrimination and retaliation lawsuit against Crosswalks, DoITT, and the City of New York in the Southern District of New York. (Stewart v. DoITT, 97 Civ. 9268 (BSJ)) Ms. John and another co-worker, Polycarpe Kalembwe, provided affidavits in support of Mr. Stewart in 2000. A draft of the pretrial order for Mr. Stewart's trial listed Ms. John and Mr. Kalembwe as potential witnesses and was sent to the City's attorneys. Mr. Stewart's case settled in August 2002, and he continued to work at DoITT until the termination of the MOU. Like Ms. John, neither Mr. Stewart nor Mr. Kalembwe was re-hired at Crosswalks after the MOU termination.

### IV. Ms. John's Allegations

#### A. Race and Age Discrimination[3]

Ms. John claims that she witnessed and experienced racial discrimination during her 10 years at Crosswalks. She alleges that Mr. Wierson did not want dark-skinned African-American employees around him, and that because she is dark skinned Mr. Wierson stopped speaking

---

[3] Ms. John filed an employment discrimination claim with the Equal Employment Opportunity Commission on October 27, 2003. On or about September 29, 2004, the EEOC issued a right-to-sue letter with respect to the ADEA charges. On or about November 8, 2004, the United States Department of Justice informed Ms. John of her right to sue in Federal Court with respect to the Title VII charges. At the time, Plaintiff was in active military service, and, pursuant to the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. App. 526, John's time to file this action was tolled during her period of military service.

3

directly to her and instead gave instructions through an intermediary. Ms. John also alleges that she was not allowed to advance professionally, while others with different skin color—specifically white people, light-skinned African-Americans, and Hispanic people—did advance. She states that she was subject to degrading treatment because cleaning duties were a part of her job description.

Plaintiff alleges two instances of racially discriminatory remarks in her workplace. She claims that Ms. Delgado, while talking to a dark-skinned African-American employee on the phone, said "You people." Additionally, plaintiff alleges that Ms. Delgado said that the employee was talking about "all that Martin Luther King nonsense."

In support of her age-discrimination claim, Ms. John alleges that she and three others were the four oldest employees on the RF CUNY Crosswalks budget line and that they were the only four people not offered positions under the rehiring plan. She also alleges that Mr. Wierson once said that Crosswalks was a place where someone should learn and move on. Plaintiff argues that this statement evidences an age bias in hiring.

**B. Retaliation**

Ms. John also alleges that she was not rehired in retaliation for her participation in the 1997 Stewart lawsuit, in which she supported Mr. Stewart with an affidavit, and was listed as a potential witness in a draft pretrial order. Ms. John alleges that Mr. Wierson knew of her participation in the lawsuit because of his frequent interactions with the General Counsel and the Crosswalks General Managers. Ms. John also alleges that after a November 2002 meeting, Mr. Wierson asked Ms. Delgado if anyone had done anything memorable, mentioning Ms. John and Mr. Stewart by name. Additionally, Ms. John alleges that Mr. Wierson and others harbored hostility and resentment toward Mr. Stewart, which spilled over onto Ms. John.

**DISCUSSION**

I. **Summary Judgment Standard**

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Major League Baseball Properties, Inc. v. Salvino, Inc., No. 06 Civ. 1867, 2008 WL 4181298, at *17 (2d Cir. Sept. 12, 2008). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material issue of fact in dispute must be supported by evidence and a party may not rely on conclusory allegations. See Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (nonmoving party may not rely on "conclusory allegations, conjecture, and speculation") (citation omitted); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact."). In determining whether any genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable factual inferences against the party seeking summary judgment. See Liberty Lobby, 477 U.S. at 255; McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

II. **The Race- and Age-Based Discrimination Claims**

  A. **Legal Standard**

Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts analyze Title VII claims using the three-factor test set forth in McDonnell Douglas Corp. v.

5

Green, 411 U.S. 792, 802-04 (1973), which requires: (1) the plaintiff to establish a prima facie case of discrimination; (2) the employer to articulate some legitimate, nondiscriminatory reason for its employment decision; and (3) the plaintiff to show that the employer's stated reasons for its employment decision are in fact pretext. Green v. New York City Health & Hosp. Corp., No. 04 Civ. 5144 (PAC), 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008). The Title VII analysis also applies to ADEA and New York State and New York City Human Rights laws claims. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003) (ADEA claims); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (state and city Human Rights claims).

The first prong of the McDonnell Douglas test (establishing a prima facie case for the discrimination claims) requires the plaintiff to show that: (1) she is a member of a protected class; (2) she was qualified for and satisfactorily performed her job; (3) she suffered an adverse employment action; and (4) circumstances surrounding the adverse action give rise to an inference of discrimination. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). If satisfied, the prima facie case creates a rebuttable presumption of discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, who must proffer a "legitimate, nondiscriminatory reason" for the challenged employment action. See Woodman, 411 F.3d at 76 (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001)). If the employer offers such a reason, the presumption of discrimination drops out, and the burden shifts back to the plaintiff to show that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (citation omitted). Essentially, the ultimate burden falls to the plaintiff to show that the evidence

6

"support[s] a reasonable inference that prohibited discrimination occurred." James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000).

### B. Application of the Law to the Race-Discrimination Claim

Defendants argue that that Ms. John fails to make a prima facie case of discrimination with regard to her termination and re-hiring because the circumstances surrounding the adverse actions do not give rise to an inference of discrimination. Defendants argue that all employees at Crosswalks working under the MOU were terminated en masse, and that a reduction in force is a legitimate, non-discriminatory reason for the termination. Certainly, courts have found that an employer's reorganization can be a valid, non-discriminatory reason to fire an employee, see Parcinski v. Outlet Co., 673 F.2d 34, 36 (2d Cir. 1982), but that does not give blanket protection for a dismissal that is only pretext for discrimination. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995); Hagelthorn v. Kennecott Corp., 710 F.2d 76, 79 (2d Cir. 1983).

Plaintiff claims that because DoITT had the funds to continue to employ her despite the termination of the MOU, this creates an inference of discrimination. Notwithstanding the fact that the Crosswalks MOU employees were paid on a separate budget line from the DoITT employees, DoITT controlled both. Thus, Plaintiff argues that the Defendants' claim that Ms. John was fired for budgetary reasons is both false and pretextual. This argument misses the point. Even if the Court assumes that Ms. John and the other Crosswalks employees working under the MOU were employees of DoITT, Ms. John alleges no facts to show that the termination of each and every MOU-funded employee gives rise to an inference of discrimination.

To the contrary, Defendants present evidence that the MOU was terminated due to the high administrative fee that DoITT paid to RF CUNY under the contract. Mr. Wierson testified

in his deposition that ". . . we were paying a very high administrative fee to manage this RF CUNY contract. So I felt that by shutting this contract down, we would take the savings and reinvest it in personnel." (See Declaration of Joshua Fay in Support of Defendants' Motion ("Fay Decl.") Ex. B at 64:10-14.) Plaintiffs ask the Court to presume that DoITT eliminated an entire group of employees in order to discriminate against Ms. John by firing and then failing to rehire her. This allegation strains credulity, and, more importantly, is not supported by evidence.

After termination, Plaintiff had an opportunity to be rehired on the DoITT budget line. Although Ms. John was allowed to interview for the Community Associate position, she claims that DoITT's failure to hire her was also discriminatory. Ms. John argues that DoITT had already preselected candidates to fill the open positions. She points to evidence that Ms. Delgado gathered resumes of people that DoITT expected to fill the positions, and that Ms. John was not on the list. (See Declaration to Plaintiff's Counter-Statement ("Pl. Decl.") Ex. 17.) Thus, she argues, her interview for the Community Associate position was illusory. Even if the Court were to take Ms. John's allegations as fact, Plaintiff still must show how this interview process gives rise to an inference of discrimination. To prove that a failure to be hired was a result of discrimination, a party must show that similarly situated employees, outside the plaintiff's protected class, were treated preferentially or differently. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). While DoITT cannot insulate itself from a charge of discrimination simply by pointing out that it hired two African-American women instead of Ms. John, Connecticut v. Teal, 457 U.S. 440, 453-54 (1982), Ms. John still must offer some evidence that the reason for her exclusion was based on discrimination. Pre-selection alone is not enough to raise an inference of discrimination. See During v. City Univ., 01 Civ. 9584 (BSJ), 2005 WL 2276875, at *7 (S.D.N.Y. Sept. 19, 2005) ("[E]ven if the Court were to credit Plaintiff's [pre-

selection allegation], that fact does not give rise to an inference of discrimination without some evidence that that pre-selection was somehow discriminatory.").

Ms. John argues that the pre-selection discrimination is evidenced by an alleged offer from Mr. Wierson to help Ms. John obtain a position at the City's 311 complaint center, which was also run by DoITT. Ms. John claims that Mr. Wierson arranged for her to have an interview at 311 but that she ultimately did not receive the job because there were no openings for people with only administrative skills. (See Pl. Decl. Ex. 3 ¶ 40.) Thus, Ms. John argues that Defendants never actually intended to help her receive a job at 311, but instead put her name forward for a position for which they knew she was unqualified. Evidence that an employer surfaced an employee's name in connection with a job that she was not qualified for is a factor that adds weight to an inference of discrimination. See Cronin, 46 F.3d at 206. Here, however, the alleged discrimination relates to DoITT's failure to hire Ms. John for the Community Associate position, not the 311 position. Ms. John simply goes too far in claiming that the pre-selection can be proved by showing that Mr. Wierson recommended her for a position at 311 that he knew she could not obtain. A reasonably jury could not find that Mr. Wierson's alleged actions with 311 prove that Ms. John's interview for the Community Associate position was illusory.

Ms. John claims that she experienced and witnessed discrimination during her 10 years at Crosswalks. These allegations of discrimination, unsupported by facts, are not sufficient to deny the motion for summary judgment. First, Ms. John claims that Mr. Wierson did not want dark-skinned African-American employees around him. Next, she claims that her job had a degrading component which a jury could determine to be racially biased because cleaning duties were part of the position. (See Pl. Decl. Ex. 3 ¶ 47.) She also claims that a former Crosswalks executive

9

told her that she could get a raise if she cleaned the executive's office. (Id.) These unsupported allegations do not create an inference of discrimination. See Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

Ms. John also states that Ms. Delgado made two discriminatory comments. These statements would fairly be classified as "stray," in the sense that they were race-neutral, not directed at Ms. John, not clearly discriminatory, and were only two remarks over Ms. John's 10 years of employment. While "stray" remarks may be considered when looking at evidence of discrimination, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007). The remarks here do little to prove that Defendants failed to rehire Ms. John based on discrimination.

Taking all of Ms. John's allegations of racial discrimination into account, the Court finds that she has failed to establish a prima facie case of discrimination, the first step in the McDonnell Douglas test. 411 U.S. at 802-04. Ms. John's broad allegations that Mr. Wierson did not like dark-skinned African-Americans around him, that Defendants pre-selected employees to hire, and that Plaintiff overheard two supposedly discriminatory comments over 10 years do not meet the standard to establish a prima facie case of discrimination nor survive the summary judgment standard. See Niagara Mohawk Power Corp., 315 F.3d at 175 (nonmoving party may not rely on "conclusory allegations, conjecture, and speculation").

Even if the Court were to find that Ms. John did establish a prima facie case of discrimination, she would fail under the McDonnell Douglas test because Defendants have provided legitimate, nondiscriminatory reasons for its employment decisions, while Ms. John

cannot show that Defendants' stated reasons were pretextual. See Hagelthorn, 710 F.2d at 81-82 (describing second and third factors of the McDonnell Douglas test).

Defendants offer proof that the MOU was terminated to save administrative costs. (See Fay Decl. Ex. B at 64:10-14.) Defendants also offer evidence that the candidates they selected for the Community Associate position were more qualified than Ms. John. For instance, Ms. Delgado testified that Ms. Walker had better computer skills than Ms. John. (Id. Ex. K at 36.) Ms. Reid, though recently out of college, had experience as a community liaison in her previous positions as marketing assistant at a YWCA and as a staff assistant to a United States Senator. (Id. Ex. N.) Further, Defendants rebut Ms. John's allegation of pre-selection by pointing out that Ms. Reid was not an employee of Crosswalks when the MOU was terminated, so she could not have been pre-selected.

Defendants' evidence points toward a natural conclusion: that the City made a reasonable hiring decision based on the candidates' qualifications, not because Defendants discriminated against Ms. John because of her race. Without some evidence of discriminatory intent, courts will not second-guess employment decisions. See Gilman v. Runyon, 865 F. Supp. 188, 193 (S.D.N.Y. 1994) (finding that courts should not assess "whether the employer's decision was erroneous or even rational, so long as the employer's actions were not taken for a discriminatory reason").

Defendants have articulated legitimate, nondiscriminatory reasons for their employment decisions. Under the principles of McDonnell Douglas, the burden then shifts back to Ms. John to show that the Defendants' stated reasons are pretextual. Burdine, 450 U.S. at 253. Relying on the allegations already presented, she has not done so. Ms. John has not demonstrated that Defendants' proffered reasons for terminating the MOU or for failing to rehire her lack

credibility.  Thus, she has not carried her burden of demonstrating pretext so as to create a genuine issue of material fact.  See, e.g., Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) ("[P]laintiff's personal conclusory assumptions are insufficient to support such an inference [of discrimination].").  Summary judgment on the race discrimination claim is therefore granted.

### C. Application of the Law to the Age-Discrimination Claim

The McDonnell Douglas burden-shifting framework applies equally to age-discrimination claims.  See Terry, 336 F.3d at 137-38.  Ms. John's allegations of age bias fail for the same reasons as her race-discrimination claims.

Ms. John alleges that Mr. Wierson told her that Crosswalks was a place for people to learn and then move on.  (See Pl. Decl. Ex 3 ¶ 64.)  She also states that while everyone who worked under the RF CUNY budget line applied for jobs at DoITT, only the four oldest employees did not receive offers, including Ms. John, and that everyone who was hired was less than 40 years old.  (Id. Ex. 32.)[4]

Even if these allegations were enough to establish a prima facie case of discrimination, the claim would fail after analysis under the second and third factors of the McDonnell Douglas test.  As they did previously, Defendants can articulate legitimate, nondiscriminatory reasons for their employment decisions.  Defendants' proffered reasons for terminating the MOU and for failing to rehire Ms. John over other candidates satisfy the McDonnell Douglas standard.  Thus, the burden shifts back to Ms. John to show that the Defendants' articulated reasons were only a pretext for discrimination.  See Roge, 257 F.3d at 168.  Ms. John's bare conclusory allegations cannot satisfy this burden.

---

[4] The exhibit that Ms. John refers to seems to contradict her statement.  Exhibit 32 apparently indicates that DoITT rehired a former employee paid under the RF CUNY budget, Luis Muniz, who was 49 years old, three years older than Ms. John.  The potential inconsistency is irrelevant to the Court's analysis and determination.

12

First, Mr. Wierson's alleged statement does not plausibly lead to the conclusion that he discriminated against her because of her age. The statement that "people should learn and then move on" is age neutral and could easily have been said to someone in their 20s as to someone in their 40s. The statement is not clear evidence of an age bias. Cf. Grant v. Hazlett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989) (finding evidence of an age bias in hiring where defendant said, "I want a young man and that's what I want and that's what I'm going to have"). As for Ms. John's allegation that none of the oldest people working on the RF CUNY budget line were rehired, this does not establish that the Defendants' proffered reasons for not rehiring her were pretextual. Defendants present evidence that they were dissatisfied with Ms. John's work. Specifically, Mr. Wierson said that Ms. John had trouble learning new computer skills and with phone skills. (See Fay Decl. Ex. B at 34:02-14; 36:04-10.) Without some evidence that age was a factor in the Defendants' decision not to rehire her, Ms. John has not met her burden under the third prong of McDonnell Douglas. Ms. John's age-discrimination claim is thereby dismissed.

### III. Retaliation Claim

Plaintiff argues that she was terminated and not rehired in retaliation for providing an affidavit in 2000 in support of Mr. Stewart's lawsuit against DoITT. Ms. John claims that her name was listed as a potential witness in a draft pre-trial order in 2002, and that her managers at Crosswalks knew of her participation and punished her by not rehiring her.

Title VII retaliation claims are also analyzed under the McDonnell Douglas framework to determine whether summary judgment is appropriate. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001). To establish a prima facie case, plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the plaintiff's participation in the protected activity; (3) an adverse employment action disadvantaging the plaintiff; and (4) a

13

causal connection between the protected activity and the adverse employment action. Isaac v. City of New York, 271 Fed. App'x 60, 63 (2d Cir. 2008) (internal citation omitted); Slattery, 248 F.3d at 94. Under McDonnell Douglas, once the plaintiff establishes a prima facie case, a defendant must offer a legitimate, non-retaliatory reason for the alleged retaliatory acts. If so, the Court then examines whether the plaintiff has demonstrated that these reasons were pretextual. See Slattery, 248 F.3d at 94-95.

Defendant argues that Ms. John does not establish a prima facie case of retaliation because she failed to show that Mr. Wierson or Ms. Delgado knew of her participation in the protected action, which was providing an affidavit in Mr. Stewart's case. Mr. Wierson and Ms. Delgado both deny knowing about Ms. John's 2000 affidavit in support of Mr. Stewart. (See Fay Decl. Ex. B at 160:20-25; 161:02-05 (Mr. Wierson); Ex. K at 100:06-15 (Ms. Delgado).) In response, Ms. John argues that the evidence establishes an inference that Mr. Wierson knew about her involvement with Mr. Stewart's lawsuit because: (1) Mr. Wierson started as General Manager in early 2002, several months before the lawsuit settlement, and he had many communications with his predecessor and with the Crosswalks General Counsel; and (2) Mr. Wierson grouped Ms. John with Mr. Stewart in a conversation to Ms. Delgado following a November 2002 meeting, where Mr. Wierson asked Ms. Delgado via e-mail if Mr. Stewart or Ms. John had done anything memorable. (See Pl. Decl. Ex. 18.) Ms. John states that the only explanation to link Mr. Stewart and Ms. John in this manner is their connection to the lawsuit. Thus, claims Ms. John, a jury should decide whether Mr. Wierson actually knew of Ms. John's involvement.

These arguments do not establish an issue of material fact about whether Mr. Wierson or Ms. Delgado knew of Ms. John's involvement with the lawsuit. Stating that Mr. Wierson

inevitably knew because he talked with his predecessor and with the General Counsel is an insufficient conclusory allegation. Plaintiff's "grouping" theory is thoroughly speculative and belied by Mr. Wierson's and Ms. Delgado's testimony. Without any evidence that Mr. Wierson or Ms. Delgado actually knew of Ms. John's participation in the protected activity, Plaintiff has failed to meet the standard to overcome summary judgment. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."). Thus, Ms. John has failed to make out a prima facie case of retaliation.[5]

But even if the Court found that Plaintiff had established a prima facie case, Plaintiff still cannot overcome the next steps in the McDonnell Douglas test. For all the reasons stated in the discussion of the discrimination claims, Defendants have met their burden to show a legitimate, non-retaliatory reason for firing and not rehiring Ms. John. The duty then falls to Plaintiff to show that the reasons were pretextual. See Slattery, 248 F.3d at 94-95. Ms. John's thin allegations that Mr. Wierson grouped her with Mr. Stewart as a troublemaker do not satisfy this burden. Thus, summary judgment on the retaliation claim is granted.

## IV. Section 1981 and 1983 Claims

Ms. John seeks to hold New York City and DoITT liable under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. To sustain such municipal liability, a plaintiff must show that her civil rights

---

[5] Defendants also argue that Ms. John cannot establish a causal connection between her support of Mr. Stewart's case and the firing and failure to rehire. A plaintiff may establish a causal connection either directly, through evidence of retaliatory animus, or indirectly, "by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct." DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987). Because the Court finds that Ms. John could not establish the knowledge requirement of a prima facie case, there is no need to decide whether Ms. John established a causal connection between the protected act and the adverse action. The Court does note, however, that the claimed events in 2000 (affidavit in support) and 2002 (listing as a witness) are not proximate in time to the termination in 2003. See e.g., Wayne v. Principi, No. 01 Civ. 941 (GWG) 2004 WL 389009, at *13 (S.D.N.Y. Mar. 3, 2004) (three-month period between protected activity and firing not enough to show causal connection). Further, the argument that 15 people were fired in order to get at two or three disgruntled employees seems exaggerated.

15

were violated pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Even though the Court has already found that the individual Defendants did not retaliate or discriminate against the Plaintiff, this does not foreclose liability under Monell "so long as the injuries complained of are not solely attributable to the actions of named individual defendants." Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999); see also Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001).

Ms. John argues that there was a history of racial discrimination at Crosswalks, and that Mr. Wierson and other high-ranking officials at DoITT made or approved a plan to restructure Crosswalks to remove certain employees based on discriminatory reasons. Ms. John says that DoITT's Human Resources Department participated in the discriminatory terminations and rehiring by working with Ms. Delgado to determine if certain people would be qualified under civil service requirements. Ms. Delgado would then tell certain people to change their resumes to qualify. (See Pl. Decl. Ex. 17.)

To determine whether a municipality is liable under Monell:

> [I]t is necessary to conduct a separate inquiry into whether there exists a "policy" or "custom." The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken.

Davis v. City of New York, 228 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2002) (citing Monell, 436 U.S. at 690, and Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). A "custom," on the other hand, is an act that may not have formal approval but is so widespread "as to have the force of law." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

16

Ms. John has failed to show either a policy or custom that would permit municipal liability. On the "policy" prong, nothing in the record discusses an "officially promulgated" policy of discrimination or retribution at DoITT, and the Court has already found that the employees involved in this case took no improper act that would create municipal liability.

On the "custom" prong, Ms. John has also failed to show a widespread custom of discrimination and retaliation. She alleges that DoITT's Human Resources Department helped in pre-selecting candidates for positions. (See Pl. Decl. Ex. 17.) Even taking the allegation as true, this fails to show that DoITT discriminated against Ms. John or took retributive actions against her. Thus, the Court finds that Ms. John's claims of municipal liability fail as a matter of law.

## CONCLUSION

Ms. John's termination was not due to discrimination on the basis of race or age, or for retaliation. Nor was the failure to hire rehire her at the restructured Crosswalks due to discrimination on the basis of race or age, or retaliation. None of her allegations raise genuine issues of material fact concerning the discrimination or retaliation. The Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is ORDERED to close out this case.

Dated: New York, New York
October 23, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge